IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHAEL W. FOWLER and
VIRGINIA L. FOWLER                                                                    PLAINTIFFS

V.                          CASE NO. 3:20-CV-3042

J. TERRY PAUL; ASA HUTCHINSON;
NATHANIEL SMITH; ARKANSAS
HIGWAY PATROL STATE POLICE;
and ARKANSAS NATIONAL GUARD                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. 7) and Memorandum Brief in Support (Doc. 8). Plaintiffs filed a Brief in Opposition (Doc. 9). However, the response was untimely, and Plaintiffs did not provide good cause for the Court to grant an extension of time. *See* Fed. R. Civ. P. 6(b)(1) (requiring "good cause" to extend the time to act).[1] Therefore, the Court does not consider Plaintiffs' untimely Response in reaching the

---

[1] Defendants filed the instant Motion on August 5, 2020. It was served on Plaintiffs via mail. Therefore, three days are added "after the period would otherwise expire." Fed. R. Civ. P. 6(d). Pursuant to Local Rule 7.2(b), which provides 14 days to respond, and Federal Rule 6(a), which indicates how to calculate a period stated in days, Plaintiffs' deadline to respond was Monday, August 24 (since the third day added fell on a Saturday). On the afternoon of August 24, Ms. Fowler left a voicemail with chambers inquiring how much time Plaintiffs had to respond to the State's Motion. A law clerk responded to Ms. Fowler the following day, August 25, informing her that Plaintiffs' time to respond had expired and any response should be accompanied by a motion asking the Court to accept the response after time has expired. On Thursday, August 27, Ms. Fowler emailed the Court indicating that she was mailing a response and request for enlargement of time. The Clerk's Office received the Brief docketed at Docket Entry 9 on Monday, August 31. No additional materials were received. The Court is aware that Plaintiffs are representing themselves and are not lawyers. Nevertheless, "*pro se* litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). Plaintiffs were required to seek leave from the Court to file an otherwise untimely response and failed to do so even after that requirement was explained to them.

1

conclusion that Defendants' Motion (Doc. 7) should be **GRANTED**.[2]

## I. BACKGROUND

Plaintiffs Michael and Virginia Fowler operate the Rock Bottom Chuck Wagon Races in Omaha, Arkansas. As alleged in the Complaint (Doc. 3), this is an annual multi-day event that brings together participants, spectators, and vendors from across Arkansas and surrounding states. In 2020, the event was scheduled for May 20 through May 24; however, the Fowlers allege that they were prevented from hosting the Rock Bottom Chuck Wagon Races because of restrictions placed on gatherings by the Governor and the Arkansas Department of Health ("ADH") in response to the ongoing COVID-19 pandemic.

Specifically, the Fowlers allege that on May 1, 2020, separate Defendant J. Terry Paul, an ADH employee, informed them that the event had to be postponed or cancelled. Additionally, Plaintiffs allege that they were told by a third party that if they persisted in holding their event, the Arkansas State Police, named here as a separate defendant, would be sent to shut down the event, put up road blocks, and revoke the Fowlers' permits. However, Plaintiffs also acknowledge that their event would have been permitted if it were modified to conform to the ADH requirements. *See* Doc. 3, ¶ 53.

On June 11, 2020, the Fowlers filed both a civil complaint form provided for *pro se* litigants (Doc. 1) and a Complaint, styled as a petition for declaratory and injunctive relief and for damages (Doc. 3). The Complaint includes five causes of action: claims for violations of Plaintiffs' substantive and procedural due process rights, a claim of common

---

[2] Even if the Court were to excuse Plaintiffs' failure to comply with the Federal Rules of Civil Procedure and admit the untimely response brief, the Court would still find that Defendants' Motion should be granted for the same reasons given here.

law fraud, and claims under Sections 1 and 2 of the Sherman Act. Defendants filed a Motion to Dismiss arguing that Plaintiffs failed to plead facts adequate to support a cause of action for common law fraud or violations of the Sherman Act and also failed to plead facts to support any claim against the state police and the Arkansas National Guard. Additionally, Defendants argued that the Defendants Hutchinson, Smith, and Paul are entitled to sovereign immunity if sued in their official capacities and qualified immunity if sued in their individual capacities. Finally, even if immunity is inapplicable, Defendants argue that the constitutional claims should be dismissed because the ADH's limitations on public gatherings are substantially related to the current public health crisis caused by the novel coronavirus, Sars-CoV-2, known as COVID-19.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"A *pro se* complaint must be liberally construed, and '*pro se* litigants are held to a

3

lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)) (internal citation omitted). "[I]f the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). "That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Id.*

### III.  DISCUSSION

#### A. Arkansas State Police and Arkansas National Guard

The Complaint names as Defendants the Arkansas State Police and the Arkansas National Guard. However, the Complaint fails to state any claim against these two Defendants. Plaintiffs assert generally that "[f]rom information and belief, the other Defendants intend to use the Arkansas State Police and Arkansas National Guard to enforce their unconstitutional edicts." (Doc. 3, ¶ 9). The only other reference to the state police is the allegation that they might have been deployed to prevent the event from occurring if Plaintiffs had not cancelled it. *See* Doc. 3, ¶¶ 55 & 56. There are no other mentions of the Arkansas National Guard.  These references fail to state a plausible claim for relief under any of the causes of action in the Complaint. Therefore, any claims against the Arkansas State Police and the Arkansas National Guard are dismissed.

#### B. Sherman Act and Common Law Fraud Claims

The third, fourth, and fifth causes of action must also be dismissed. The Plaintiffs' claims for common law fraud and violations of Sections 1 and 2 of the Sherman Act are simply recitations of the elements of such claims. As discussed above, "'a formulaic

4

recitation of the elements of a cause of action will not do.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Quotations from an unspecified "internet source," apparently on another continent, alleging that the pandemic is a "monstrous fraud" (Doc. 3, ¶¶ 10–13) do not provide the Court with the required factual enhancement to state a plausible claim that any Defendant made a knowing misrepresentation or engaged in a conspiracy. Therefore, claims three, four, and five must be dismissed.

### C. Constitutional Claims

Plaintiffs also allege violations of their procedural and substantive due process rights, guaranteed by the Fourteenth Amendment. As relief, they request compensatory and punitive damages, declaratory judgment "that the actions of the Defendants described herein violate the rights of the Plaintiffs," and an injunction "from any further interference with the property and business of Plaintiffs." (Doc. 3, p. 16). Section 1983 provides a cause of action against any "person who, under color of any statute" deprives a citizen of "any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Supreme Court has held that states are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). Furthermore, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (internal citation omitted). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71 n.10 (internal quotation omitted).

The remaining Defendants named in the Complaint are Asa Hutchinson, Governor of Arkansas; Nathaniel Smith, Secretary of the ADH at the relevant time; and J. Terry

5

Paul, an ADH employee. The Complaint does not specify whether these Defendants are named in their individual or official capacities. "If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998)). Since the Complaint does not specify, the Court must presume that claims one and two are brought against Defendants Hutchinson, Smith, and Paul in their official capacities. Therefore, Plaintiffs' constitutional claims against Defendants Hutchinson, Smith, and Paul, are dismissed to the extent Plaintiffs seek compensatory and/or punitive damages because § 1983 does not provide a cause of action to seek damages against a state official in his or her official capacity. The Court will also dismiss Plaintiffs' prayer for declaratory judgment, as it seeks a declaration as to the lawfulness of officials' past actions and is therefore barred by the same principles that bar money damages. *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

To the extent that Plaintiffs seek prospective injunctive relief preventing "any further interference with the property and business of Plaintiffs," (Doc. 3, p. 16), section 1983 does provide a cause of action. Nevertheless, Plaintiffs have failed to meet their burden to demonstrate that they face a threat of ongoing or future harm. "It is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 190 (2000)) (cleaned up). Plaintiffs "suspect that[, if] unrestrained by this Court, Defendants will cause them more problems this time next year in Plaintiffs' next event."

6

(Doc. 3, p. 16). The possibility that the Governor and ADH will exercise emergency powers in a way that violates Plaintiffs' constitutional rights more than eight months in the future is far too speculative to constitute a certainly impending injury. The Court cannot anticipate whether COVID-19 will still present a public health emergency next spring or the nature of the ADH requirements that may be in force when Plaintiffs seek to hold their event, as ADH updates its directives periodically. *See, e.g.*, Doc. 7-8 (indicating that the requirements imposed on large outdoor venues changed on May 4, May 18, and June 15, 2020).[3] Therefore, the Court cannot conclude that an injury to Plaintiffs' substantive and procedural due process rights is certainly impending, and their claim for prospective injunctive relief must also be dismissed.

Finally, the Court notes that even if Plaintiffs were to refile a complaint seeking damages against Defendants Hutchinson, Smith, and Paul in their individual capacities, the facts alleged would not be sufficient to support claims for violations of Plaintiffs' procedural and substantive due process rights.

### i. Substantive Due Process

The Fowlers assert that they have a "fundamental right to earn a living and engage in business" upon which Defendants have infringed. (Doc. 3, ¶ 75). In *Robbins v. Becker*, the plaintiffs brought a similar substantive due process claim alleging deprivation of their "fundamental constitutional right to make a living and engage in their chosen occupation."

---

[3] In addition to the Complaint, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1357 (3d ed. 2004)). The Court finds the ADH directives to be matters of public record and items subject to judicial notice and will therefore consider their content in ruling on the Motion, even though they were not included with the Complaint.

794 F.3d 988, 993 (8th Cir. 2015). The Eighth Circuit rejected this claim, affirming its holding in an earlier case that "the Fourteenth Amendment protects 'the liberty to pursue a particular calling or occupation, not the right to a specific job.'" *Id.* at 994 (quoting *Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008)) (internal quotation marks omitted and modifications adopted). The Eighth Circuit has made clear that

> Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise. Substantive due process is concerned with violations of personal rights so severe so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power.

*Id.* (quoting *Winslow v. Smith*, 696 F.3d 716, 736 (8th Cir. 2012)).

The state action that Plaintiffs allege deprived them of their constitutional right to earn a living is an ADH Directive, *see* Doc. 3, ¶ 54, which the Court infers to be a reference to the Directive Regarding Large Outdoor Venues (the "Directive"), effective May 4, 2020. *See* Doc. 7-9. The Directive in effect on May 20–24, when the Rock Bottom Chuck Wagon Races were to occur, caps attendance at thirty-three percent of capacity and requires that the host of the event submit a plan for approval by the Secretary of Health if more than fifty people will be in attendance. The Directive further requires face coverings for anyone age ten and older; social distancing in seating, lines, and performances; posted informational signage; and a specific cleaning regimen.[4]

---

[4] Plaintiffs seem to allege that the Directive was not applicable to their event because it exempts "gatherings of people in unconfined outdoor spaces, such as parks or athletic fields where physical distancing of at least six (6) feet can be easily achieved." *See* Doc. 3, ¶ 54. However, Plaintiffs' own description of the event includes various races and other competitions, multiple rodeos, live music performances, dances, an auction, and sales of food, beer, and goods. *See* Doc. 3, ¶¶ 40–47. Thus, Plaintiffs' description of their event falls within the plain language of the Directive, which "covers outdoor venues" where people gather for "concerts, . . . sporting events, rodeos, races, . . . [and] auctions," (Doc. 7-9), and there is no plausible claim that the Directive was not applicable.

Plaintiffs' allegations do not state a plausible claim that the Directive is "egregious and extraordinary" state action rising to the level of a violation of their substantive due process rights. In April 2020, the Eighth Circuit recognized that "Arkansas, along with the rest of the nation and the world, is in the midst of an unprecedented health crisis occasioned by the worldwide COVID-19 pandemic. Every day, the number of people infected with COVID-19 continues to rise, along with the virus's death toll." *In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020). Furthermore, the courts have long recognized the state's interest in protecting the public health and that its decisions in this arena are entitled to deference by the judicial branch. In the midst of a different public health emergency, the Supreme Court held that judicial power to review state "legislative action in respect of a matter affecting the general welfare" arises only where the statute "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). The Eighth Circuit recently applied the same inquiry to another ADH directive, admonishing that "[i]n our analysis, we must take care not to usurp the functions of another branch of government, such as by second-guessing the state's policy choices in crafting emergency public health measures." *In re Rutledge*, 956 F.3d at 1018 (cleaned up); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (noting that when state officials "undertake to act in areas fraught with medical and scientific uncertainties," they have broad latitude that "should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people" (modification adopted)) (Roberts, J. concurring).

Given this context, Plaintiffs do not make a plausible claim that the ADH Directive

9

"has no real or substantial relation" to protecting the public health or is "beyond all question, a plain, palpable invasion" of the Plaintiffs' substantive due process rights. There is not sufficient factual matter in the Complaint to raise a claim of an infringement "disproportionate to the need presented" by the COVID-19 pandemic in Arkansas.

### ii. Procedural Due Process

Nor have Plaintiffs plausibly alleged that they were deprived of their property without procedural due process. "Property interests protected by due process are not created by the Constitution but, rather, are created and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law." *Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008) (quoting *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005)). Plaintiffs have not cited any basis for asserting that they had a right to conduct this event on their land without restriction. The bald assertions that "Plaintiffs have a property interest in their property," (Doc. 3, ¶ 78(1)), and "Defendants did in fact deprive Plaintiffs of the use of their property," *id.* at ¶ 78(2)), fail to establish an interest or a deprivation. In fact, the Complaint implicitly acknowledges that Plaintiffs would have been permitted to hold their event if they complied with the requirements of the ADH Directive. *See id.* at ¶¶ 53–54.

Even if Plaintiffs have sufficiently alleged a deprivation of property that would otherwise be protected by the due process clause, however, they have not made a plausible claim that they had an insufficient opportunity to be heard. The Supreme Court has held that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)), and instructed that "identification of the specific dictates of due process generally requires consideration of three distinct factors:"

the private interest, the "risk of an erroneous deprivation of such interest through the procedures used" and the added value of additional procedural requirements, and the Government's interest. *Id.* at 335. Here, Plaintiffs acknowledge that they had multiple phone calls with Defendant Paul "regarding the conditions Plaintiffs would be required to follow" in order to hold their event. (Doc. 3, ¶ 53). Plaintiffs were told that there would be too many attendees at their event for it to proceed without modification, but Plaintiffs declined to modify the structure of the event. *See id.* at ¶ 59.

Given that Plaintiffs allege only restrictions on the use of their property, not a complete deprivation thereof, Plaintiffs' opportunity to discuss the nature of their event and possible modifications with Defendant Paul, and the importance of the state's interest in protecting the public health discussed above, the Complaint does not make a plausible claim that Plaintiffs have suffered a violation of their procedural due process rights.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Defendants' Motion to Dismiss (Doc. 7) is **GRANTED** in its entirety and the case is **DISMISSED** without prejudice.

**IT IS SO ORDERED** on this 3rd day of September, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE